PILLSBURY WINTHROP SHAW PITTMAN LLP
Edward Flanders
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
edward.flanders.@pillsburylaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C. MICHAEL MARTELL,<br><br>Plaintiff,<br><br>-against-<br><br>COHEN CLAIR LANS GREIFER THORPE & ROTTENSTREICH, LLP; ROBERT STEPHAN COHEN; AND SHANNON R. SIMPSON,<br><br>Defendants. | Case No. 1:18-CV-09692 (ER)<br><br>ECF case electronically filed<br><br>Oral Argument Requested |


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

EDWARD FLANDERS
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
(212) 858-1000

*Attorneys for Defendants
Cohen Clair Lans Greifer Thorpe
& Rottenstreich, LLP, Robert Stephan
Cohen, and Shannon R. Simpson*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................5

ARGUMENT..............................................................................................................11

    A. Plaintiff's Claims are Barred by the Doctrine of *Res Judicata*
       and Cannot be Maintained Outside the Matrimonial Action ................................11

    B. Dismissal is Proper Because the Sworn Statements Made by Plaintiff in his
       Verified Complaint Are Implausible and Demonstrably False..............................14

CONCLUSION...........................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry,*
    449 U.S. 90 (1980)................................................................................................19

*Amalgamated Sugar Co. v. NL Indus., Inc.,*
    825 F.2d 634 (2d Cir. 1987)................................................................................20

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P,*
    No. 14-Civ-2065 (AJN), 2015 WL 13654007 (S.D.N.Y. Mar. 26, 2015)...............22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................23

*Bristol-Myers Squibb Secs. Litig.,*
    312 F.Supp.2d 549 (S.D.N.Y. 2004)...................................................................23

*CDR Creances S.A.S. v. Cohen,*
    23 N.Y.3d 307 (2014) .........................................................................................26

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)................................................................................24

*Chase Manhattan Bank, N.A. v. Celotex Corp.,*
    56 F.3d 343 (2d. Cir. 1995).................................................................................21

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)..................................................................................24

*DeLuca v. AccessIT Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)...................................................................24

*EDP Medical Comput. Sys., Inc. v. U.S.,*
    480 F.3d 621 (2d Cir. 2007)................................................................................21

*In re Express Scripts Holding Co. Secs. Litig.,*
    No. 16 Civ. 3338 (ER), 2018 WL 2324065 (S.D.N.Y. May 22, 2018)..................23

*Gonzalez v. City of New York,*
    396 F. Supp. 2d 411 (S.D.N.Y. 2005).................................................................20

*Gropper v. 200 Fifth Owner LLC,*
    151 A.D.3d 635 (1st Dep't 2017) ...................................................................20, 27

*Hadges v. Yonkers Racing Corp.,*
    48 F.3d 1320 (2d Cir. 1995)................................................................................25

ii

*I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*,
    936 F.2d 760 (2d Cir. 1991)...................................................................24

*Kamen v. American Telephone & Telegraph Co.*,
    *791 F.2d 1006 (2d Cir. 1986)* ...........................................................25

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
    494 F. App'x 153 (2d Cir. 2012) ..........................................................24

*Lipow v. Net1 UEPS Techs., Inc.*
    131 F.Supp.3d 144 (S.D.N.Y. 2015)....................................................20

*Melcher v. Greenberg Traurig LLP*,
    135 A.D.3d 547 (1st Dep't 2016) .........................................................22

*Melcher v. Greenberg Traurig LLP*,
    164 A.D.3d 1171 (1st Dep't 2018) .......................................................22

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)...................................................................20

*Oorah, Inc. v. Kane Kessler, P.C.*,
    No. 17 Civ 7175 (PAE), 2018 WL 3996930 (S.D.N.Y. Aug. 21, 2018) ...............22

*Oppenheimer v. Westcott*,
    47 N.Y.2d 595 (1979) ..........................................................................26

*Pierre v. Lieberman & Chase Inv. Servs.*,
    No. 16 Civ 5473 (GBD), 2017 WL 3316266 (S.D.N.Y. Aug. 3, 2017) .........19, 20, 21

*Pierre v. Lieberman & Chase Inv. Servs.*,
    No. 16 Civ 5473 (GBD), 2017 WL 9565660 (S.D.N.Y. June 14, 2017)...............21

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
    88 F.Supp.2d 179 (S.D.N.Y. 2000) .....................................................24

*Seldon v. Bernstein*,
    503 F. App'x 32 (2d Cir. 2012) ......................................................21, 23

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..................................................................20

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)..................................................................19

*Wheeler v. Slanovec*,
    No. 16-Civ-9065 (KMK), 2018 WL 2768651 (S.D.N.Y. June 8, 2018) ...............20

*Woodson v. Mendon Leasing Corp.*,
    100 N.Y.2d 62 (2003) ...................................................................................26

**Statutes**

N.Y. Judiciary Law,
    Section 487............................................................................................ *passim*

New York Domestic Relations Law,
    Section 236B(3) ...........................................................................................6

**Rules and Regulations**

Federal Rules of Civil Procedure,
    Rule 12(b)(6)...................................................................................6, 19, 23
    Rule 12(b)(7)...................................................................................................8

Federal Rules of Evidence,
    Rule 201(b) ..................................................................................................19

New York Civil Practice Law and Rules,
    Rule 5015............................................................................................8, 12, 26
    Rule 5015(a)(3).............................................................................................26

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Cohen Clair Lans Greifer Thorpe & Rottenstreich LLP ("Cohen Clair LLP"), Robert Stephan Cohen ("Mr. Cohen"), and Shannon R. Simpson ("Ms. Simpson") (collectively, "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of C. Michael Martell ("Plaintiff" or "Mr. Martell") as against Defendants for failure to state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

The Verified Complaint arises from a matrimonial action (the "Matrimonial Action") that Plaintiff's then wife, Sally Martell ("Mrs. Martell"),[2] commenced against Mr. Martell on July 30, 2013. Defendants represented Mrs. Martell in the Matrimonial Action, and Plaintiff's current attorney, William S. Beslow, Esq. ("Mr. Beslow"), represented Mr. Martell in that action as well. The Matrimonial Action was resolved by settlement by the parties on April 10, 2015 (the "Settlement Agreement"),[3] which states that ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████[4]████████████████████████████████████

███████████████████████████

---

[1] All exhibits are annexed to the Declaration of Edward Flanders submitted herewith and are referred to herein as "Ex. __" Unless otherwise noted, all emphasis is added.

[2] Mr. Martell refers to his former wife by her maiden name in his Verified Complaint, despite the fact that he is aware that she continues to use her married name. We assume that this, as well as the references to Mrs. Martell's family, the attachment of the couple's prenuptial agreement, and the myriad references to the couple's financial arrangements despite the confidentiality provisions of the Settlement Agreement, are included in an effort to embarrass Mrs. Martell.

[3] Each of the documents cited in this memorandum are referenced, relied upon and/or integral to the Verified Complaint, and/or are documents of which the Court may take judicial notice, as explained in the Statement of Facts and Argument sections.

[4] Although the Settlement Agreement contains lengthy and unambiguous directives to maintain the confidentiality of both the terms of the Settlement Agreement itself and the parties' financial information, Mr. Martell nonetheless – and in direct violation of the terms of the Settlement Agreement – quotes its substantive provisions

Now, over three and a half years later, the Verified Complaint alleges that Defendants devised an elaborate "disingenuous playbook" that they allegedly used to pressure Mr. Martell into accepting unreasonable settlement demands in the Matrimonial Action.[5] The gravamen of the Verified Complaint is that in the course of implementing this "playbook," Defendants made false assertions in an application to the court in the Matrimonial Action in order to obtain an extension of the service of process deadline, thereby allegedly committing attorney deceit in violation of N.Y. Judiciary Law § 487. Specifically, the Verified Complaint alleges that Defendants falsely stated that at the time of the application settlement negotiations were ongoing between the parties, and that Defendants hoped that an extension of the service of process deadline would facilitate an amicable resolution of the divorce. Moreover, the Verified Complaint alleges that this scheme was conceived and executed by Defendants without the knowledge of their client, Mrs. Martell. The allegations are not only implausible, they are demonstrably false.

*First*, despite the Verified Complaint's sworn allegations that settlement negotiations had not occurred before November 18, 2013 (the date of the request for the extension of time to serve the matrimonial complaint), the very documents upon which the Verified Complaint relies, and which are integral to it, demonstrate that ████████████████████████████

████████████ As admitted in the Verified Complaint and an affirmation filed by Mr. Beslow in support of his motion to vacate the *ex parte* order extending the time to serve process (the "Motion to Vacate"), (1) Defendants gave Mr. Beslow a copy of the prenuptial agreement (which Defendant claimed not to have), and (2) Mr. Beslow discussed with Defendants, and ████████████████

---

in detail. *See, e.g.*, ¶¶ 109-111. We do not wish to compound Plaintiff's violation of the Settlement Agreement, which is why we are filing it under seal.

[5] This allegation is flatly contradicted by the Settlement Agreement. Ex. 2, Art. XIX ¶ 1 ████████████
████████████████████████████████████████

███████████████████████, Mr. Martell's wishes with regard to visitation with the parties' children, *all before November 18, 2013*. Defendants then sent Mr. Beslow a settlement proposal on December 4, 2013 (the "Settlement Proposal"), that ███████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████It is clear, therefore, that settlement discussions had occurred prior to November 18, 2013, and that Defendants had a good faith belief that the matter could be resolved amicably.

*Second,* the Verified Complaint's assertion that Mrs. Martell was unaware of the stated reasons for the Defendants' application for an extension of time to serve the matrimonial complaint is not only implausible, it is demonstrably false.[6] Mrs. Martell submitted an affidavit (the "Sally Martell Affidavit") in opposition to Plaintiff's Motion to Vacate, stating that ██████████████

█████████████████████████████████, of which Mr. Martell and Mr. Beslow were plainly aware. Yet, Mr. Beslow and Mr. Martell still filed this Verified Complaint that hinges on the existence of a scheme devised by Mrs. Martell's lawyers without her knowledge.

*Third,* the Verified Complaint also implausibly alleges that Mr. Beslow withdrew the Motion to Vacate (which the Verified Complaint omits to state ████████████████████ because vacatur of an order under CPLR Rule 5015 requires a showing of fraud by "clear and convincing evidence," which he allegedly believed he could not convince a different judge had actually occurred. As to the former, CPLR Rule 5015 specifically permits vacatur for any "misconduct," which does *not* have to be proven by clear and convincing evidence. As to the

---

[6] It appears that this allegation was made to avoid a finding that Mrs. Martell is a necessary party to this action, which itself would provide another basis to dismiss the Verified Complaint. *See* Fed. R. Civ. Proc: 12(b)(7).

latter, it strains credulity to believe that one Supreme Court Justice would be unmoved by alleged attorney deceit perpetrated upon another Supreme Court Justice. Indeed, Plaintiff now seeks to have the exact same allegations adjudicated by this Court. If Plaintiff is of the view that a federal court judge can properly consider his allegations, there is no plausible basis for his assertion that a state court judge could not.

*Fourth*, the allegations of the Verified Complaint asserting that Mr. Martell was in dire financial straits are contradicted by its allegations demonstrating Mr. Martell's ability to litigate the Matrimonial Action notwithstanding the lack of payment pursuant to the prenuptial agreement. Indeed, the Settlement Agreement, ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ ████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████

*Finally* – and fatally – even if this Court were to assume that the allegations of the Verified Complaint are true (which they are not), Plaintiff's action under Judiciary Law § 487 is barred by the doctrine of *res judicata*. Mr. Beslow and Mr. Martell raised these same claims in the Motion to Vacate, which was ████████████████████ As noted above, Mrs. Martell and Mr. Martell later agreed in the Settlement Agreement ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ The subsequent Judgment of Divorce, entered on May 6, 2015, ████████████████████████████████████████████████████████████ ████████████████████ *Res judicata* bars claims where, as here, there was previous litigation

4

between the parties or their privies (including their attorneys), and the party now raising such claims had a full and fair opportunity to litigate the claim. Not only did Mr. Beslow and Mr. Martell have a full and fair opportunity to litigate these issues, ███████████████████████████

███████████████████████

Moreover, Mr. Martell's claims under Judiciary Law § 487 should be dismissed for the further, and entirely distinct reason, that such claims *must* be raised during the pendency of a lawsuit in which the deceptive acts allegedly occurred, which Mr. Beslow and Mr. Martell ████

███████████████████████

For these reasons, the Verified Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

On August 23, 2003, Mrs. Martell and Mr. Martell were married. *See* Ex. 1, ¶ 17. Four days before the wedding, they entered into an undisputedly valid prenuptial agreement, and on July 30, 2013, three weeks before the couple's ten-year wedding anniversary, Mrs. Martell commenced a divorce proceeding against Mr. Martell in the Supreme Court of the State of New York. *Id.* ¶¶ 18, 42.

On September 25, 2013, Mr. Cohen sent a copy of the prenuptial agreement to Mr. Beslow. *Id.* ¶ 39. On November 1, 2013, Mr. Beslow and Mr. Cohen discussed ██████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████ Ex. 3, Beslow Aff. ¶ 3(e); [7] *see also*

---

[7] The Motion to Vacate and Mr. Beslow's affirmation in support of the Motion to Vacate (the "Beslow Affirmation") are relied upon and integral to the Verified Complaint. *See* Ex. 1, ¶¶ 101-107. For example, paragraph 101 of the Verified Complaint relies on the terms and effect of the Motion to Vacate to state: "[i]n order to attempt to undo the damage to him arising out of the *Ex Parte* Order, on February 7, 2014, Plaintiff moved the Divorce Court for an order vacating the *Ex Parte* Order (the 'Vacate Motion')." As explained in the Argument section (*infra*), documents that are attached to the complaint, incorporated into the complaint by

Ex. 1, ¶ 40. Mr. Beslow also admitted that



Ex. 3, Beslow Aff. ¶ 3(g). [8]

On December 4, 2013, Defendants sent the Settlement Proposal to Mr. Beslow, which is referred to, quoted from, relied on and integral to the Verified Complaint. *See, e.g.*, Ex. 1, ¶¶ 75-79. The Settlement Proposal follows up on and refers to

---

reference, and those that are integral to or relied upon in the complaint are appropriately considered on a motion to dismiss, and one cannot evade a motion to dismiss by failing to attach documents that undermine the legitimacy of one's claims. Moreover, as also explained in the Argument section (*infra*) the Court may take judicial notice of documents filed in other lawsuits, particularly where, as here, the doctrine of *res judicata* is at issue.

[8] This issue has to do with loans made by Mrs. Martell to Mr. Martell's business. Ex. 1, ¶ 111. Although Mr. Martell professes outrage at Mrs. Martell's efforts to recover these loans, he also claims that the note memorializing the loans was defective (*id.* ¶ 87), and, in any event, ultimately concedes that "[Mrs. Martell] had transferred the aggregate sum of approximately $1.5 Million to [Mr. Martell's business], which [the business's] general ledger recorded as loans." *Id.* ¶ 111. While Mr. Martell includes facts about this non-issue in his Verified Complaint, even he acknowledges that it has nothing to do with Defendants, as Mrs. Martell was represented by separate counsel in connection with these loans. *Id.* ¶ 83. Nevertheless, Mr. Beslow's admission that this communication occurred provides further support that negotiations between Mr. and Mrs. Martell were ongoing.

Notwithstanding these facts, the Verified Complaint implausibly alleges that no settlement negotiations had taken place between the parties as of November 18, 2013. Ex. 1, ¶¶ 39-41.

On November 18, 2013, nine days before the November 27, 2013 service of process deadline, Defendants filed on Mrs. Martell's behalf an application for an *ex parte* order to extend the deadline to serve the matrimonial complaint. As detailed in the Verified Complaint, this application included the following statements:

> The parties have been attempting to resolve issues with respect to custody of their two children as well as any financial obligations between them.
>
> This extension of time is respectfully requested so that the parties may continue in their effort to resolve the dissolution of their marriage without litigation.
>
> It is our (and our client's hope) that the best chance for a non-litigated settlement and the most amicable resolution possible will be enhanced by receipt of the requested extension.

*Id.* ¶ 71.

On November 21, 2018, the Honorable Judge Martin Schoenfeld granted the *ex parte* order and the service deadline was extended. *Id.* ¶ 68.

On January 26, 2014, Mr. Beslow filed the Motion to Vacate pursuant to CPLR Rule 5015, alleging that ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Mr. Beslow alleged that the extension financially harmed Mr. Martell because he was entitled to receive a distributive award from Mrs. Martell within sixty days of service of process and the extension delayed this payment. *See* Ex. 1, ¶¶ 99-100; Ex. 3, Beslow Aff. ¶ 11. Mr. Beslow also

alleged that if the extension had not been granted, Mrs. Martell would have had to commence a new action and Mr. Martell was therefore entitled to a distributive award of $1 Million instead of $500,000. *Id.* The argument is, of course, specious. Had Mrs. Martell not secured (or applied for) the extension of time to serve the matrimonial complaint, she could have easily served it on Mr. Martell and thus irrevocably bound Mr. Martell to the pre-ten-year-anniversary payout.

On July 2, 2014, Mrs. Martell filed her opposition to the Motion to Vacate in the Matrimonial Action, including her affidavit.[9] Mrs. Martell stated therein that ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
██ ██ ██

████████████████████████████████████████████████████
████████████████████████████████████████████████████
██ ██ ██

████████████████████████████████████████████████████
██ ██ ██

---

9   The opposition to the Motion to Vacate (which includes the Sally Martell Affidavit) is expressly referenced in the Complaint. *See* Ex. 1, ¶ 101(2)) (Mrs. Martell "filed papers in opposition to the Vacate Motion"). Alternatively, as discussed in the Argument section *(infra)*, the Court can to take judicial notice of these documents since they were filed in previous litigation.



Mrs. Martell also testified that

*Id.* ¶ 6. Indeed, the Settlement Agreement, █████████████████████████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

In a stipulation dated August 1, 2014, less than one month after Mrs. Martell submitted her

opposition, Mr. Martell ██████████████████████████████████ Ex. 6, p. 2.[10] On April

10, 2015, Mrs. Martell and Mr. Martell entered into the Settlement Agreement, and on May 6,

2015, a Judgment of Divorce was entered stating that █████████████████████████████

███████████████████████████████ Ex. 7, p. 9.[11]

Now, nearly five years later, the Verified Complaint raises ██████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████
████████████████████████ Five years ago, ████████████████████████████████████
████████████████████████████████, his Verified Complaint should be dismissed –

likewise with prejudice – for the same reasons, and for the additional reasons that his claim is

barred by the doctrine of res judicata and may not be maintained outside the Matrimonial Action.

---

[10] The stipulation is expressly referenced in, and is integral to, the Verified Complaint. *See* Ex. 1, ¶¶ 107(1), 107(2). Alternatively, the Court may take judicial notice of the Stipulation since it was filed in the Matrimonial Action and is ███████████████████████████████████████████████████████████████████████

[11] The Court can also take judicial notice of the Judgment of Divorce since it was filed in the Matrimonial Action, and is ██████████████████████████████████████████████████████████████████████████████

## ARGUMENT

## THE VERIFIED COMPLAINT SHOULD BE DISMISSED
## IN ITS ENTIRETY WITH PREJUDICE

### A. Plaintiff's Claims are Barred by the Doctrine of *Res Judicata* and Cannot be Maintained Outside the Matrimonial Action

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Whether a claim is barred by the doctrine of *res judicata* can be appropriately decided on a motion to dismiss under Rule 12(b)(6). *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014) ("[a] court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss"); *Pierre v. Lieberman & Chase Inv. Servs.*, No. 16 Civ. 5473 (GBD) (HBP), 2017 WL 3316266, *2 (S.D.N.Y. Aug. 3, 2017) ("[d]ismissal based on *res judicata* or collateral estoppel is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred") (citation omitted).[12] "*Res judicata* will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987). Each of the elements is met here.

---

[12] The Court may take judicial notice of documents filed in other courts for consideration on a motion to dismiss. *See* Fed. R. Evid. 201(b) ("the Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information"); *Wheeler v. Slanovec*, No. 16-Civ-9065 (KMK), 2018 WL 2768651, at *2 (S.D.N.Y. June 8, 2018) (taking judicial notice of a motion filed in prior state court litigation and its response); *Lipow v. Net1 UEPS Techs., Inc.* 131 F.Supp.3d 144, 157-58 (S.D.N.Y. 2015) (taking judicial notice of decisions filed in another court for consideration on a motion to dismiss).

*First*, as for an adjudication on the merits, it is well established that 

Mr. Beslow and Mr. Martell raised █████████████████████████████████████████████ Ex. 6, p. 2. Moreover, the Judgment of Divorce expressly states that ███████████████ ███████████████████████████████████████ Ex. 7, p. 9.

*Second*, as for privity, it is well settled that attorneys are privies of their clients for purposes of *res judicata*. Indeed, Judge Daniels recently applied the doctrine of *res judicata* where a plaintiff raised allegations of fraudulent conduct committed by an attorney. *See Pierre,* 2017 WL 3316266 at *2. In *Pierre,* a former employee had resolved an employment discrimination lawsuit against her employer by settlement, which was entered by the court, that she then attempted to challenge. *Id.* The court issued an order enforcing the agreement, and the former employee then sued her employer and her employer's attorney alleging that the settlement agreement was the product of fraud perpetrated by the attorney and others. The court applied the doctrine of *res judicata* to bar her claim, stating that "attorneys of a party have been found to be in privity with their employers or client for purposes of the *res judicata* analysis." *Pierre v. Lieberman & Chase Inv. Servs.,* No. 16 Civ. 5473 (GBD) (HBP), 2017 WL 9565660, at *6 (S.D.N.Y. June 14, 2017), *report and recommendation adopted,* No. 16 Civ. 5473 (GBD) (HBP), 2017 WL 3316266, (S.D.N.Y. Aug. 3, 2017).

*Third*, as for the same cause of action being asserted, Plaintiff ███████████████ ██████████████████████████████████████████████████████

███████████████████████████ ██ ████████████████

████████████████████████████████████████████████████████

██████████████

### 1. **Plaintiff's Claim Cannot Be Maintained Outside the Matrimonial Action**

New York law is clear that Plaintiff's claim under Judiciary Law § 487 cannot be brought by separate action; rather, his remedy lay exclusively in the action where the alleged misconduct occurred. *See Seldon v. Bernstein*, 503 F. App'x 32, 32-33 (2d Cir. 2012) (affirming lower court's *sua sponte* dismissal of claim made under Judiciary Law § 487 "on the ground that [plaintiff] was required to raise the alleged deceit giving rise to that claim during the pendency of the proceeding in which it occurred," relying on New York Appellate Division cases, including *Specialized Indus. Servs. Corp. v. Carter*, 68 A.D.3d 750 (2d Dep't 2009), *Hansen v. Werther*, 2 A.D.3d 923 (3d Dep't 2003), *New York City Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dep't 2000) and *Yalkowsky v. Century Apartments Assocs.*, 215 A.D.2d 214 (1st Dep't 1995)).[13]

As this Court recently found, "[d]istinct from the doctrines of claim or issue preclusion, New York Law requires that claims under Section 487 be brought in the underlying action where the attorney misconduct occurred." *Oorah, Inc. v. Kane Kessler, P.C.*, No. 17 Civ. 7175 (PAE), 2018 WL 3996930, at *4 (S.D.N.Y. Aug. 21, 2018). In *Oorah*, this court dismissed plaintiff's claim for damages under Judiciary Law § 487 on the basis that the claim should have been brought

---

[13] Plaintiff's reliance on *Melcher v. Greenberg Traurig LLP*, 135 A.D.3d 547 (1st Dep't 2016), cited by his counsel in his response to Defendants' pre-motion conference letter, is misplaced, as that case is entirely distinguishable on its facts. In *Melcher*, the court permitted a separate action under Judiciary Law § 487 only because the allegations of attorney misconduct were expressly excluded from the settlement agreement in the prior action, which is not the case here. Moreover, in *Melcher*, the court found that the plaintiff in that case did not seek, as Plaintiff here seeks, to collaterally attack a prior adverse judgment. If the plaintiff had sought to collaterally attack a prior adverse judgment, the court made clear that plaintiff's exclusive remedy lay in the underlying action. *Id.* at 554. *See also Melcher v. Greenberg Traurig LLP*, 164 A.D.3d 1171, 1174 (1st Dep't 2018) (affirming in a subsequent appeal in the same action that the lower court "correctly held that Judiciary Law § 487 entitles [plaintiff] to a recovery based only on the excess legal costs he incurred in the [underlying] action that were proximately caused by [the attorney's] alleged deceit").

in the underlying action in which the alleged misconduct occurred. Likewise, in *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P*, No. 14-Civ-2065 (AJN), 2015 WL 13654007, at \*10 (S.D.N.Y. Mar. 26, 2015), this Court relied on *Seldon* (cited above) to dismiss a claim under Judiciary Law § 487 because the remedy lay exclusively in the prior proceeding.

████████████████████████████████████████████████████

████████████████████████████████████ There is thus no

basis in law or in fact for Plaintiff's instant action, brought some five years after ████████

████████████████████████████████████████████████████

████████████████████████████████ is improper as a

matter of law.

### B. Dismissal is Proper Because the Sworn Statements Made by Plaintiff in his Verified Complaint Are Implausible and Demonstrably False

A court should grant a motion to dismiss under Rule 12(b)(6) where the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *In re Express Scripts Holding Co. Secs. Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, \*6 (S.D.N.Y. May 22, 2018) (quoting *Iqbal*, 556 U.S. at 678). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 556 U.S. at 680. Moreover, a complaint must be dismissed where its allegations are "demonstrably false" (*Bristol-Myers Squibb Secs. Litig.*, 312 F.Supp.2d 549, 569-570 (S.D.N.Y. 2004)), particularly where, as here, documents

"contradict [p]laintiff's allegations" (*Rapoport v. Asia Elecs. Holding Co.*, Inc., 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000)).[14]

The gravamen of the Verified Complaint is that Defendants violated N.Y. Judiciary Law § 487 through their application for an *ex parte order* extending the service of process deadline. The Verified Complaint's allegations, however, are implausible and demonstrably false for the following five reasons.

*First*, the Verified Complaint alleges that Defendants' application in the Matrimonial Action constituted attorney deceit based on the allegedly false assertion that settlement negotiations were ongoing prior to November 18, 2013. The very documents on which the Verified Complaint relies, however, demonstrate that ████████████████████ ████████████████ In particular, the Verified Complaint includes a lengthy discussion of the Settlement Proposal to allege Defendants' bad faith but, tellingly, does not attach the Settlement Proposal as an exhibit. As discussed in the Statement of Facts (*supra*, pp. 5-6, 8), the Settlement Proposal and Mr. Beslow's Affirmation demonstrate that ████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████ Ex. 4, pp. 1-2; Ex. 3, Beslow Aff. ¶ 3(e); *see also* Ex.

---

[14] In ruling on a motion to dismiss, the Court may consider materials that are attached to the complaint, incorporated into the complaint by reference, and those that are integral to the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation mark omitted). A document is "integral" where the complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The failure to include documents of which plaintiffs "had notice and which were integral to their claim–and that they apparently most wanted to avoid–may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc.*, 949 F.2d at 48; *see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153 (2d Cir. 2012) (holding that plaintiff's claims were contradicted and thereby defeated by the plain language of documents relied upon but not attached to the complaint). Put simply, a "plaintiff cannot evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach [the document] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*, 936 F.2d 760, 762 (2d Cir. 1991).

1, ¶¶ 39-40. These documents put the lie to the Verified Complaint's allegations that Defendants' application was "disingenuous and untrue." Ex. 1, ¶ 72. Moreover, the Sally Martell Affidavit states that  Ex. 5, Sally Martell Aff. ¶¶ 13, 21. The Court need not find that the statements in the Sally Martell Affidavit confirming that ████████████ are true; rather, Mrs. Martell's testimony demonstrates ████████████

██████████████████████████.[15]

*Second*, the Verified Complaint alleges that Mrs. Martell was unaware of their scheme to defraud the Court. *See* Ex. 1, ¶¶ 59-60, 72, 74. At the outset, it is implausible that Defendants would have devised this "disingenuous playbook" completely of their own accord without informing Mrs. Martell, their client, of their plans. In any event, Mrs. Martell's alleged ignorance

████████████████████████████ Ex. 5, ¶¶ 7, 20, 22, 28. Accordingly, Mr. Martell and Mr. Beslow had no good faith basis to allege that Mrs. Martell was unaware of the reasons for Defendant's request for an extension of time to serve the Matrimonial Complaint.

*Third*, the Verified Complaint alleges that Plaintiff withdrew his Motion to Vacate because, in order to succeed on such motion, Mr. Beslow would have been required to show fraud by clear and convincing evidence. *See* Ex. 1, ¶¶ 105-107. This is false. CPLR Rule 5015(a)(3) permits vacatur for "fraud, misrepresentation, or *other misconduct*." *See Oppenheimer v. Westcott*, 47

---

[15] The Second Circuit has held that attorneys are entitled to rely on the objectively reasonable statements made by their clients. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) (holding that an attorney was not liable for information presented to the court where the record, including sworn statements made by his client, contained evidentiary support for the attorney's statements).

N.Y.2d 595, 603 (1979) (discussing how the CPLR's provision for vacatur based on misconduct "broadens the basis for relief by motion beyond that recognized in prior case law, which required the movant to establish the commission of a fraud").[16] Accordingly, Mr. Beslow did not have to demonstrate fraud to succeed on the motion for vacatur, and the assertion that he withdrew the motion for this reason is implausible and demonstrably false. Mr. Beslow is simply misrepresenting the standard applicable to a motion to vacate pursuant to CPLR Rule 5015 in an attempt to make the claims in this case seem plausible, which they are not.

*Fourth*, the Verified Complaint alleges that Mr. Beslow withdrew the Motion to Vacate because Judge Kaplan, who was assigned to the Matrimonial Action, could not have determined whether fraud was committed upon Judge Schoenfeld, who signed the *ex parte* order granting the extension. *See* Ex. 1, ¶¶ 104-105. But courts routinely determine whether misconduct occurred in situations where they were not present. Indeed, the Verified Complaint is now asking this Court to perform the exact task that it asserts Judge Kaplan was incapable of performing. The only plausible inference to be drawn here is that Mr. Beslow did not withdraw his Motion to Vacate ▮▮▮▮ ▮▮▮▮▮▮ because of a non-existent "clear and convincing" evidence standard, nor because Judge Kaplan could not determine whether fraud was committed upon Judge Schoenfeld. Rather, Mr. Beslow ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ the evidence demonstrated that the Motion to Vacate was meritless.

*Fifth*, the Verified Complaint alleges that Mr. Martell was in dire financial straits, and because the extension of the service deadline delayed a disbursement under the prenuptial

---

[16] *See also CDR Creances S A.S. v. Cohen*, 23 N.Y.3d 307, 311 (2014) (requiring clear and convincing evidence only when determining whether "fraud" was committed upon the court). Indeed, the reason for vacatur need not even be enumerated. *See Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d 62, 68 (2003) (establishing wide breadth of permissible grounds for vacatur but reversing lower court's decision to vacate where statements made by plaintiff did not establish any semblance of misconduct).

agreement, his ability to litigate was prejudiced. Ex. 1, ¶¶ 92-93, 108. This allegation makes no sense, as according to Mr. Martell himself, Mrs. Martell could easily have served the matrimonial complaint on Mr. Martell and thus ensured no argument with respect to the distributive award owed to Mr. Martell under the prenuptial agreement. Mr. Martell's claim is further belied by the Verified Complaint's discussion of Mr. Martell's ability to protect his rights in the Matrimonial Action by retaining Mr. Beslow, a well-known, experienced matrimonial lawyer, who advocated vigorously on Mr. Martell's behalf, including by making a motion to vacate the *ex parte* order he believed so prejudiced his client. Mr. Martell clearly had enough money to protect his interests, and his allegation that he was harmed by Defendants' disingenuous "playbook" is implausible. Moreover, Mr. Martell's ██████████████████████████████████████████████ ██████████████████████████████████ *See* Ex. 5, Sally Matell Aff. ¶ 6. Indeed, the Settlement Agreement, ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████ *Id.*, Art. III ¶ 2. This puts the lie to the sworn allegations made here that Mr. Martell was in dire financial straits, and that Defendants knew or should have known that which, according to the Verified Complaint, was integral to Defendants' "disingenuous playbook" to exploit Mr. Martell.

In sum, the sworn allegations of the Verified Complaint are implausible and demonstrably false, and thus cannot support Plaintiff's claims.

## CONCLUSION

Based on the foregoing, Defendants respectfully request dismissal of the Verified Complaint in its entirety with prejudice.

PILLSBURY WINTHROP SHAW PITTMAN LLP


By:  /s/ Edward Flanders
     Edward Flanders

1540 Broadway
New York, NY 10036
(212) 858-1000 (phone)
(212) 858-1500 (fax)
edward.flanders@pillsburylaw.com


*Attorneys for Defendants*
*Cohen Clair Lans Greifer Thorpe & Rottenstreich, LLP,*
*Robert Stephan Cohen, and Shannon R. Simpson*