PILLSBURY WINTHROP SHAW PITTMAN LLP
Edward Flanders
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
edward.flanders@pillsburylaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C. MICHAEL MARTELL,<br><br>   Plaintiff,<br><br> -against-<br><br>COHEN CLAIR LANS GREIFER THORPE & ROTTENSTREICH, LLP; ROBERT STEPHAN COHEN; AND SHANNON R. SIMPSON,<br><br>   Defendants. | Case No. 1:18-CV-09692 (ER)<br><br>ECF case electronically filed<br><br>Oral Argument Requested |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

EDWARD FLANDERS
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
(212) 858-1000

*Attorneys for Defendants*
*Cohen Clair Lans Greifer Thorpe*
*& Rottenstreich, LLP, Robert Stephan*
*Cohen, and Shannon R. Simpson.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 4

THE VERIFIED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE ................................................................................................................. 4

    A. Plaintiff's Claims are Barred by the Doctrine of *Res Judicata* and Cannot be Maintained Outside the Matrimonial Action ....................................................... 4

        1. *Res Judicata* Clearly Bars Plaintiff's Claims............................................... 4

        2. Plaintiff's Claim Cannot Be Maintained Outside the Matrimonial Action .................. 5

    B. Dismissal is Proper Because the Sworn Statements Made by Plaintiff in his Verified Complaint Are Implausible and Demonstrably False ....................................... 7

CONCLUSION................................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

Cases

*Broadwhite Assocs. v. Truong*,
    237 A.D.2d 162 (1st Dep't 1997) ...................................................................................6

*Carnegie Assocs. Ltd. v. Lerner, Arnold & Winston*,
    142 A.D.3d 890 (1st Dep't 2016) ...................................................................................6

*Gillen v. McCarron*,
    6 N.Y.S.3d 253 (2d Dep't 2015) .....................................................................................4

*Melcher v. Greenberg Traurig LLP*,
    24 N.Y.S.3d 249 (1st Dep't 2016) ...............................................................................3, 5

*Miller v. City of Ithaca*,
    No. 3:10-CV-597, 2012 WL 1589249 (N.D.N.Y. May 4, 2012) .....................................1

*Newin Corp. v. Hartford Acc. & Indem. Co.*,
    37 N.Y.2d 211 (1975) .................................................................................................4, 6

*Oorah, Inc. v. Kane Kessler, P.C.*,
    No. 17 Civ. 7175 (PAE), 2018 WL 3996930 (S.D.N.Y. Aug. 21, 2018) ................3, 4, 5, 6

*Violette v. P.A. Days, Inc.*,
    427 F.3d 1015 (6th Cir. 2005) ........................................................................................1

Statutes and Codes

Judiciary Law
    Section 487................................................................................................................ *passim*

New York Domestic Relations Law
    Section 237............................................................................................................... 2, 8

Rules and Regulations

CPLR 5015(a)(3) .................................................................................................................9

Fed. R. Civ. P. 6 ...................................................................................................................1

Other Authorities

Amanda Noss, U.S. Census Bureau, *Household Income: 2013* 3 (2014),
    https://www.census.gov/library/publications/2014/acs/acsbr13-02.html ......................8

Defendants respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint (the "Motion to Dismiss").[1]

## PRELIMINARY STATEMENT

Plaintiff alleges one cause of action in his Complaint, namely, that Defendants violated Judiciary Law § 487 by stating that settlement negotiations were ongoing in their request for an extension of time in the Matrimonial Action. But Plaintiff now confirms in his memorandum of law in opposition to our motion to dismiss (the "Opposition")[2] that settlement negotiations had occurred by November 18, 2013 (the date of the request for the extension), thereby rendering his allegations of attorney deceit demonstrably false and implausible. Plaintiff pled and now confirms in his Opposition that Defendants and Mr. Beslow exchanged a copy of the pre-nuptial agreement on September 25, 2013, which set the terms for resolving most financial issues between the parties. *See* Ex. 1 ¶ 39; Opp. at p. 5. Plaintiff concedes that Mr. Beslow engaged in a settlement discussion with Defendants on November 1, 2013, and does not dispute that Mr. Beslow gave Defendants a document memorializing Plaintiff's wishes at that meeting. *See* Opp. at p. 5; Motion to Dismiss at p. 5.[3] Plaintiff also does not dispute that sometime "between November 1, 2013 and November

---

[1] All capitalized terms not defined herein retain their meaning ascribed to them in the Motion to Dismiss. All exhibits are annexed to the Declaration of Edward Flanders submitted with the Motion to Dismiss and are referred to herein as "Ex. __" Unless otherwise noted, all emphasis is added.

[2] Plaintiff's Opposition was untimely. The deadline for submitting this Opposition was January 21, 2019 (*see* 12/6/18 Docket Minute Entry) and Plaintiff did not file his Opposition until 11:38pm on January 22, 2019. S*ee* Opposition at CM/ECF Header. Plaintiff was not excused from the January 21, 2019 deadline because it fell on a legal holiday. When a time period is stated in days or hours, Fed. R. Civ. P. 6 provides that the deadline shifts to the next day that is not a Saturday, Sunday, or legal holiday. The Sixth Circuit made clear, however, that Fed. R. Civ. P. 6 does not apply when a court sets a date certain. *See Violette v. P.A. Days, Inc.,* 427 F.3d 1015, 1016 (6th Cir. 2005) ("Rule 6(a) applies only to situations where parties must compute deadlines based on the passage of a fixed number of days and, therefore, the Rule does not apply to situations where the court has established a specific calendar day as a deadline"); *see also Miller v. City of Ithaca*, No. 3:10-CV-597, 2012 WL 1589249, at *4 (N.D.N.Y. May 4, 2012) (denying motion as untimely where court-ordered deadline fell on a Saturday and movant did not file its papers until the following Monday).

[3] Plaintiff does not dispute that any of the documents cited by Defendants in the Motion to Dismiss (which were integral to and relied upon in the Complaint) should be considered, and thereby concedes that they are properly before this Court. Plaintiff also does not come forward with any other documents to refute Defendants' assertions.

1

17, 2013," he had a communication with a different lawyer for Mrs. Martell regarding the loans disputed by Mr. Martell. Ex. 3, Beslow Aff. ¶ 3(g); Motion to Dismiss at p. 6. Nor does he refute that Defendants sent Mr. Beslow a settlement proposal on December 4, 2013, which referred to their discussion on November 1, 2013, at which they stated their intention to work together to "resolve this matter quickly and amicably." *See* Opp. at p. 5. The quantity and quality of these settlement discussions, which Plaintiff seems to contest, are irrelevant. Accordingly, Plaintiff's allegation that Defendants attempted to deceive the state court by stating that settlement negotiations were ongoing is demonstrably false and implausible.

Plaintiff also alleges that Defendants were engaged in a "broader fraudulent scheme" to exploit his allegedly dire financial position. As demonstrated by Defendants' opening papers and confirmed by Plaintiff's Opposition, Plaintiff earned $250,000 in income and publicly touted his lavish spending in the same year he claimed to be in dire financial straits. *See* Opp. at p. 8. Mr. Beslow's assertion that Defendants somehow should have known that Mr. Martell was in dire financial straits because "some people spend money indiscriminately or unwisely or in a manner which is imprudent," and social media posts can be "hyperbolic or designed to create the image of success," is nothing short of stunning, and provides a textbook example of an implausible allegation. *See* Opp. at pp. 8, 14. Put simply, it is implausible that a man whose income totaled $250,000, nearly five times the average household income in New York in 2013 and over five times the average household income in Maine where Mr. Martell resided, was in such dire financial straits that he could not protect his rights in litigation. Moreover, this is obviously untrue because Plaintiff does not deny that Mr. Beslow, an experienced matrimonial attorney, litigated vigorously on his behalf before any money was transferred to him as part of the parties' settlement.[4]

---

[4] Mr. Beslow, under New York Domestic Relations Law § 237, also could have sought an interim award of attorney's fees for Mr. Martell as the allegedly "less monied spouse." *See Infra* at p. 8, fn 10.

The Opposition also concedes that Plaintiff could have moved to vacate the ex parte order in the Matrimonial Action for mere "misconduct." Opp. at p. 23. It is therefore implausible that Mr. Beslow believed that he had to show "fraud on the court" at that juncture. Indeed, "fraud on the court" is not even mentioned in Mr. Beslow's affirmation in support of the Motion to Vacate.

In any event, Mr. Beslow does not and cannot dispute that (1) he brought these same allegations of attorney deceit in the Matrimonial Action and withdrew them "with prejudice" (Ex. 6, p. 2); (2) the Settlement Agreement provides that the parties "settle[d] and adjust[ed] all issues that were or could have been raised in the Action, or in any other proceedings between them, including, without limitation … all other ancillary financial and other issues which have been raised or could have been raised in the Action or in connection with the parties' marriage, or otherwise" (Ex. 2, pp. 2-3); and (3) the Judgment of Divorce incorporates the Settlement Agreement and declares "that the parties have resolved all issues existing between them" (Ex. 7, p. 9). As a result, Plaintiff's claim is clearly barred by the doctrine of *res judicata* and the common law rule that § 487 claims must be brought in the proceeding in which the allegedly deceitful conduct occurred. Mr. Beslow attempts to obscure the applicability of each of these rules, but to no avail.

*First*, Plaintiff contends that there is a "division in authority" regarding the application of *res judicata* to § 487 claims, citing dicta in one case, *Oorah, Inc. v. Kane Kessler, P.C.*, No. 17 Civ. 7175 (PAE), 2018 WL 3996930, at *4 (S.D.N.Y. Aug. 21, 2018), for this proposition. But *Oorah* relied on *Melcher v. Greenberg Traurig LLP*, 24 N.Y.S.3d 249, 255 (1st Dep't 2016). *See Oorah,* 2018 WL 3996930, at *4. *Melcher*, however, involved the doctrine of collateral estoppel, which the court found was not applicable because the issue at hand was never litigated and resolved; to the contrary, the parties in *Melcher* specifically preserved § 487 claims in the parties'

settlement agreement. *Res judicata* applies in full force and effect here since these allegations were previously raised and withdrawn "with prejudice," and both the Settlement Agreement and Judgment of Divorce in the Matrimonial Action state that all issues were resolved.

Finally, Plaintiff states that § 487 claims need not be brought in the underlying proceeding when a claimant alleges a "broader fraudulent scheme." The New York Court of Appeals has made clear, however, that a "broader fraudulent scheme" must involve issues that were beyond the scope of the previous litigation. *See Newin Corp. v. Hartford Acc. & Indem. Co.*, 37 N.Y.2d 211, 218 (1975). Here, Plaintiff specifically alleges that the scheme was to "deprive Plaintiff of his right to seek and obtain a fair and equitable division of marital property acquired by Plaintiff and Mrs. Martell during the marriage" (Opp. at p. 2), which falls squarely within the scope of the Matrimonial Action. Accordingly, the "broader fraudulent scheme" exception has no application here.

## ARGUMENT

### THE VERIFIED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE

**A.     Plaintiff's Claims are Barred by the Doctrine of *Res Judicata* and Cannot be Maintained Outside the Matrimonial Action**

   1.     <u>*Res Judicata* Clearly Bars Plaintiff's Claims</u>

Plaintiff contends that the application of *res judicata* to § 487 claims is unclear and cites one case, *Oorah*, for this proposition. *See* Opp. at pp. 9-10; *see also* 2018 WL 3996930, at *4. As noted above, the court in *Oorah*, in dicta,[5] mistakenly relied on inapposite case law to arrive at its conclusion. *Oorah* first cites to a Second Department case that correctly found that § 487 claims were barred by the doctrine of *res judicata*. *See id.* (citing *Gillen v. McCarron*, 6 N.Y.S.3d 253,

---

[5] *See* 2018 WL 3996930, at *4 ("[t]his Court need not resolve whether *res judicata* bars Oorah's Section 487 claims because those claims must be dismissed for two other, independent reasons").

4

254 (2d Dep't 2015)). In support of an alleged "division in authority," though, *Oorah* cites to *Melcher,* 24 N.Y.S.3d at 255, for the proposition that *res judicata* will not always bar § 487 claims. *See* 2018 WL 3996930, at *4. But the portion of *Melcher* cited by the *Oorah* court arose in its discussion of collateral estoppel. *See Melcher*, 24 N.Y.S.3d at 255 ("[n]or is plaintiff *collaterally estopped* from litigating the issue of the alleged deceit in this action, as that issue was never fully litigated and decided in the *Apollo* action"). Moreover, in *Melcher,* there was no judgment that "resolved all issues;" to the contrary, the court expressly held that the issue of deceit had not been litigated, and the parties explicitly preserved the ability to litigate the § 487 claims in their settlement agreement. *See* 24 N.Y.S.3d 249, 253-55.

As noted previously, there is no dispute that Plaintiff's allegations here were raised and withdrawn "with prejudice" in the Matrimonial Action (Ex. 6, p. 2), and that the Settlement Agreement "settle[d] and adjust[ed] all issues that were or could have been raised in the Action, or in any other proceedings between them, including, without limitation … all other ancillary financial and other issues which have been raised or could have been raised in the Action or in connection with the parties' marriage, or otherwise" (Ex. 2, pp. 2-3), and the Judgment of Divorce incorporates the Settlement Agreement and declares "that the parties have resolved all issues existing between them" (Ex. 7, p. 9). Based on the foregoing, the doctrine of *res judicata* applies here in full force and effect.

  2. <u>Plaintiff's Claim Cannot Be Maintained Outside the Matrimonial Action</u>

Plaintiff's claim is also barred because § 487 claims must be brought in the underlying proceeding (except in limited circumstances not present here) where Plaintiff already litigated and withdrew "with prejudice" the exact same allegations. Plaintiff, while agreeing that there is considerable case law that supports this rule, claims that an exception applies when the alleged

deceit is "part of a broader fraudulent scheme."[6] *See* Opp. at p. 11 (citing *Oorah,* 2018 WL 3996930, at *4). This exception only applies, however, when the fraudulent scheme is "greater in scope than the issues determined in the prior proceeding."[7] The New York Court of Appeals made clear in *Newin Corp.* that "[i]f the total objective of the scheme was the determined issue, then there is a bar." 37 N.Y.2d at 218.

Here, by Plaintiff's admission, the purpose of the alleged scheme was to "deprive Plaintiff of his right to seek and obtain a fair and equitable division of marital property acquired by Plaintiff and Mrs. Martell during the marriage … ." Opp. at p. 2.[8] The division of marital property was determined in the Matrimonial Action and so the "total objective" of the alleged scheme fell squarely within that action. *See id.*[9] Accordingly, there is no "broader fraudulent scheme" alleged here that warrants an exception to the general rule that § 487 claims must be brought in the underlying action.[10]

---

[6] Defendants did not refer to this exception in their opening papers because it has no application here.

[7] *Oorah,* 2018 WL 3996930, at *4 (finding that a "broader fraudulent scheme" was not alleged where the events in the alleged scheme were before the state court in the previous litigation); *see also Newin Corp.,* 37 N.Y.2d at 217-218 (finding that a "larger fraudulent scheme" was alleged where the fraud involved primary bonds litigated in the underlying proceeding and excess coverage bonds that were beyond the scope of that lawsuit).

[8] Notably, Plaintiff confirmed that the Settlement Agreement was "fair and equitable; that [he] entered into [the] Agreement freely and voluntarily and not as a result of duress or undue influence; that [he has] ascertained and weighed all the facts and circumstances likely to influence [his] judgment [in the Agreement]." Ex. 2, Art XIX ¶ 2.

[9] While Plaintiff refers to litigation in New Hampshire regarding loans issued by Mrs. Martell to his business (*see e.g.,* Opp. at p. 2), these issues all pertained to the division of property between the parties and were indeed resolved by the Settlement Agreement. *See* Ex. 2, Art II ¶ 8.

[10] Plaintiff also states that § 487 claims need not be brought in the underlying proceeding when "the making of such a claim … would result in the disqualification of such attorney as trial counsel in the action." Opp. at p. 12. But Plaintiff did not raise the issue of attorney disqualification when he asserted these same allegations five years ago in the Matrimonial Action. Moreover, disqualification is only required where the testimony of an advocate-witness would be "so adverse to the factual assertions or account of events offered on behalf of the client as to warrant his disqualification." *Broadwhite Assocs. v. Truong*, 237 A.D.2d 162, 163 (1st Dep't 1997) (internal citation omitted); s*ee also Carnegie Assocs. Ltd. v. Lerner, Arnold & Winston*, 142 A.D.3d 890 (1st Dep't 2016) (denying motion to disqualify testifying attorney despite allegation of legal malpractice). Had Defendants been asked to testify in the Matrimonial Action, their testimony would have been wholly consistent with Mrs. Martell's position. Indeed, the affirmations submitted by Defendants in the Matrimonial Action were, in all respects, consistent with Mrs. Martell's affidavit. *Compare* Ex. 5, Simpson Aff., and Ex. 5, Cohen Aff., *with* Ex. 5, Sally Martell Aff.

**B.  Dismissal is Proper Because the Sworn Statements Made by Plaintiff in his Verified Complaint Are Implausible and Demonstrably False**

To the extent that there was any doubt, Plaintiff's Opposition confirms that the Complaint's allegations are demonstrably false and implausible.

*First,* Plaintiff confirms that settlement negotiations were ongoing by November 18, 2013 (the date of the request for the extension in the Matrimonial Action):

- Plaintiff pled and now confirms that the parties exchanged the pre-nuptial agreement on September 25, 2013 (over a month and a half before the request for an extension was filed), which governed the resolution of most financial issues between the parties. *See* Ex. 1, ¶ 39; Opp. at p. 5.

- Plaintiff concedes that Mr. Beslow engaged in a settlement discussion with Defendants on November 1, 2013. *See* Opp. at p. 5. Plaintiff asserts that this conversation "lasted a mere five minutes," but even if this were true, a five-minute settlement discussion during which the parties expressed a desire to resolve the matter amicably, particularly where there is a pre-nuptial agreement, is a settlement discussion nonetheless.

- Plaintiff also does not dispute that Mr. Beslow "brought a memorandum that Mr. Martell had given [him] that day about his wishes, and [Mr. Beslow] gave it to Mr. Cohen for consideration by Mrs. Martell and him." Ex. 3, Beslow Aff. ¶ 3(e); Motion to Dismiss at p. 5. Indeed, Plaintiff admits that "Plaintiff had expressed [his] preliminary views as to issues relating to his children." Opp. at p. 5.

- And Plaintiff does not dispute that sometime "between November 1, 2013 and November 17, 2013," he had a communication with a different lawyer for Mrs. Martell with respect to her "proposed execution of documents relating to the refinancing of a note with respect to Mr. Martell's business." Ex. 3, Beslow Aff. ¶ 3(g); Motion to Dismiss at p. 6.

- Lastly, Plaintiff does not refute that Defendants sent a settlement proposal to Mr. Beslow on December 4, 2013, which referred to the attorney's November 1, 2013 discussion about their intention to settle the matter amicably. *See* Opp. at p. 5.

*Second*, Plaintiff alleges that the "lie" in the ex parte application was part of a "broader fraudulent scheme" to exploit his financial circumstances and "deprive [him] of his right to seek and obtain a fair and equitable division of marital property acquired by Plaintiff and Mrs. Martell during the marriage … ." Opp. at p. 2. This allegation is also implausible. As already discussed,

7

Defendants did not lie about the existence of settlement negotiations. Moreover, Plaintiff does not deny that Mr. Beslow, an experienced matrimonial attorney, was litigating vigorously on his behalf and achieved a satisfactory result, which belies his argument that he was pressured into settlement.[11]

It is also implausible that Plaintiff was in dire financial straits, and even if he were, that Defendants were aware of this alleged financial hardship. As noted above, Plaintiff does not—because he cannot—dispute that he earned approximately $250,000 in 2013, nor that he engaged in lavish spending. *See* Opp. at p. 8. Mr. Beslow reasons that these facts do not defeat the alleged financial status because "[i]t is a self-evident proposition that some people spend money indiscriminately or unwisely or in a manner which is imprudent," and the social media posts may have been "hyperbolic or designed to create the image of success." Opp. at. pp. 8, 14.[12] Plaintiff thereby asserts that even though he had access to at least $250,000 (nearly five times the average household income in New York in 2013),[13] he squandered it and was in such dire financial straits that he could not litigate his divorce. But even if it were true that Plaintiff squandered his funds

---

[11] Mr. Beslow, an experienced matrimonial attorney, also could have sought an interim award of attorney's fees under New York Domestic Relations Law § 237 if Plaintiff was truly struggling to pay his legal bills such that his ability to litigate was impaired. *See* DRL § 237 ("[i]n any action or proceeding brought … for a divorce … the court may direct either spouse … to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse").

[12] In Defendants' opening papers, they also raised the argument that Mrs. Martell could have served Mr. Martell before the deadline for service elapsed if the application for the extension of time been rejected, and thus Mr. Martell would not have been entitled to the additional $500,000 that he seeks. *See* Motion to Dismiss at p. 8. Plaintiff implausibly asserts that he was in Boston during the week preceding the original service deadline without Mrs. Martell's knowledge, and so he could not have been served. *See* Opp. at p. 14. Boston is not a far-distant land and Mrs. Martell and Defendants could easily have located Mr. Martell there, perhaps aided by Mr. Martell's social media post one month earlier on October 28, 2013, that he "[l]ooked at new loft spaces in Boston today." Ex. 5, Sally Martell Aff. ¶ 6; Motion to Dismiss at p. 9. Moreover, "[b]ecause service of process upon him would have been in Plaintiff's financial interests, Plaintiff would have happily authorized Mr. Beslow to accept service of process on his behalf." Ex. 1, ¶ 47.

[13] Amanda Noss, U.S. Census Bureau, *Household Income: 2013* 3 (2014), https://www.census.gov/library/publicati ons/ 2014 /acs/acsbr13-02.html.

and was exaggerating wildly on social media, Defendants needed to have been *aware* of this financial hardship. Otherwise, they could not have designed a scheme to exploit it. Plaintiff's claim therefore rests on the implausible assertion that despite Plaintiff's $250,000 income and his public display of lavish spending and wealth, Defendants knew that he was in dire financial straits. As noted above, it is implausible that Plaintiff was in dire financial straits and, even if it were true, it is even more implausible to allege that Defendants would have known this.

*Third*, as Defendants demonstrated in their opening papers, Plaintiff could have vacated the ex parte order for any "misconduct." CPLR 5015(a)(3). Mr. Beslow does not—because he cannot—dispute this, yet, he continues to assert that he had to prove "fraud on the court" in his Motion to Vacate, and so was forced to meet its "enormously high" standard. Opp. at 16. This is simply untrue. Nowhere in Mr. Beslow's affirmation in support of the Motion to Vacate does he allege "fraud on the court." And it is implausible that Mr. Beslow would have attempted to meet such an onerous standard when he could have procured vacatur for any "misconduct." For example, Plaintiff could have requested vacatur for an inaccurate statement contained in the Defendants' application, regardless of any intent to deceive on the part of Defendants. The only reasonable inference to draw is that Mr. Beslow invented this requirement of fraud in an attempt to make his claims seem plausible; they are not.

# CONCLUSION

Based on the foregoing, Defendants respectfully request dismissal of the Complaint in its entirety with prejudice.

PILLSBURY WINTHROP SHAW PITTMAN LLP

1540 Broadway
New York, NY 10036
(212) 858-1000 (phone)
(212) 858-1500 (fax)
edward.flanders@pillsburylaw.com

By: /s/ Edward Flanders
    Edward Flanders

*Attorneys for Defendants*
*Cohen Clair Lans Greifer Thorpe & Rottenstreich,*
*Robert Stephan Cohen, and Shannon Simpson.*