UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C. MICHAEL MARTELL,

                              Plaintiff,

                - against -

COHEN CLAIR LANS GREIFER THORPE &
ROTTENSTREICH, LLP, ROBERT STEPHAN
COHEN, and SHANNON R. SIMPSON,

                              Defendants.

**OPINION AND ORDER**
18 Civ. 9692 (ER)

Ramos, D.J.:

      C. Michael Martell ("Martell") brings this action against the law firm Cohen Clair Lans Greifer Thorpe & Rottenstreich LLP, and attorneys Robert Stephan Cohen and Shannon R. Simpson (collectively, "Defendants"), arising from a divorce lawsuit in the Supreme Court of the State of New York where Defendants represented Martell's former wife, Sarah "Sally" Klingenstein Martell ("Mrs. Martell"). Martell alleges that the Defendants intended to deceive the New York State judge presiding over the divorce action into granting them an extension on service of process, which placed Martell in a vulnerable financial position in connection with settlement negotiations. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

I.    **Factual and Procedural Background**

      Martell is domiciled in Maine and brings this case pursuant to diversity jurisdiction. Martell married his "enormously wealthy" wife on August 23, 2003. *Id.* ¶¶ 17, 70. He had a negative net worth at the time of the marriage and his wife had assets totaling approximately $75 million. *Id.* ¶ 19. The couple signed a pre-nuptial agreement ("Pre-Nuptial Agreement"), which

stipulated that if either one of them initiated divorce proceedings, Martell would get a distributive award of $500,000 if filed between five and ten years of marriage, and $1,000,000 if filed between ten and twenty years of marriage.  *Id.* ¶ 22.  It further stipulated that if it was Mrs. Martell who initiated the divorce proceedings, then the distributive award would be payable within sixty days after service of process upon Martell.  *Id.* at ¶ 23.  The couple's marriage broke down irretrievably in the spring of 2013 and they discussed the subject of divorce.  *Id.* ¶¶ 25–26.  Mrs. Martell initiated divorce proceedings on July 30, 2013, about a month before the couple reached their ten-year wedding anniversary.  *Id.* ¶ 42.  Defendants represented her in the divorce action ("Divorce Action") in front of Judge Martin Schoenfeld.  *Id.* ¶¶ 2, 68.

Service of process was due on November 27, 2013.  *Id.* ¶¶ 45–46.  Martell was frequently in Manhattan and in the couple's Maine home in the months following the divorce filing and was willing to be served.  *Id.* ¶¶ 44, 46.  However, instead of serving Martell within 120 days per New York law, on or about November 19, 2013, Mrs. Martell's attorneys filed an *ex parte* order seeking an extension of service.  *Id.* ¶ 63.  The Defendants based the extension request on the allegedly false statements that the Martells were in the process of negotiating a settlement without the need of litigation.  *Id.* ¶ 69.  Judge Schoenfeld granted the extension of service for another 120 days.  *Id.* ¶ 63.

But Martell contends that the only substantive contact between counsel for Mrs. Martell and his counsel, was on November 1, 2013 when they had a perfunctory five-minute discussion following a meeting on another case, and later a telephone conversation and e-mail exchange about Martell staying in the Manhattan apartment.  *Id.* ¶ 40.  He further alleges that as of November 18, 2013, there had been no settlement negotiations between counsel.  *Id.* ¶ 41.

Martell asserts that delay in service was a ploy crafted by Defendants to apply financial pressure on him and force him to accept unfavorable terms in the divorce settlement due to his allegedly precarious financial circumstance at the time. *Id.* ¶¶ 49, 51. Martell's business was generating losses and Mrs. Martell had already cut him off financially, ceasing the monthly $10,000 allowance she provided for living expenses and preventing him from using her credit cards. *Id.* ¶¶ 51, 57.

Martell moved to vacate the *ex parte* order on the ground of fraud as Defendants had caused Judge Schoenfeld to grant their application based on their allegedly deceitful application. *Id.* ¶ 101. Both the Divorce Action and the motion to vacate were assigned to Judge Deborah A. Kaplan, who declined to transfer the motion to Judge Schoenfeld. *Id.* ¶¶ 102–03. Martell believes that Judge Kaplan could not properly decide whether Judge Schoenfeld would have declined to issue the *ex parte* order if he knew the Defendants had been dishonest. *Id.* ¶ 105. Based on his belief of the impossibility of prevailing on the motion to vacate if it was not decided by Judge Schoenfeld, Martell agreed to settle by withdrawing the motion and accepting the $500,000 distributive award, among other benefits. *Id.* ¶¶ 107, 109–10.

Despite the settlement and withdrawal, Martell commenced the instant action on October 22, 2018 seeking damages from Defendants arising out of their alleged violation of Section 487 of the Judiciary Law of the State of New York, due to the attorneys' alleged intention to deceive Judge Schoenfeld with the *ex parte* order submission. *Id.* ¶ 14. Martell claims he suffered financial damages in excess of $500,000 because Judge Schoenfeld granted the extension request. *Id.* ¶ 12. His theory is that if Judge Schoenfeld had known that the extension application was based on a misrepresentation, he would have rejected it and Mrs. Martell would not have been able to serve him with process, as he was away the week it was set to expire,

3

which would have allegedly led to a second divorce action. *Id.* ¶ 118. This second divorce action would have been filed after their tenth wedding anniversary entitling Martell to an additional $500,000 under the Pre-Nuptial Agreement. *Id.* ¶¶ 99, 118. Defendants moved to dismiss this action on December 21, 2018 claiming that the parties had engaged in settlement negotiations prior to Defendants filing the *ex parte* order, the § 487 claims are barred by *res judicata* and could not have been brought outside of the Divorce Action, and that the claims in the complaint are implausible and demonstrably false. Docs. 13–15.

## II. Legal Standards

### A. Motion to Dismiss for Failure to State a Claim

When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *In re Express Scripts Holding Co. Sees, Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, *6 (S.D.N.Y. May 22, 2018) (quoting *Twombly*, 550 U.S. at 570). Moreover, a complaint must be dismissed where the documents show its allegations were "demonstrably false." *Bristol-Myers Squibb Secs. Litig.*, 31.2 F. Supp. 2d 549, 569–570 (S.D.N.Y. 2004).

**III.    Discussion**

Section 487 of the New York Judiciary Law provides that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party...forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. Law § 487.  Even a single act can make an attorney liable for an intentionally deceitful or collusive act.  *Heriveaux v. Lopez-Reyes*, No. 17-CV-9610(AJN), 2018 WL 3364391, at *3 (S.D.N.Y. July 10, 2018), *aff'd*, No. 18-1433-CV, 2019 WL 2611058 (2d Cir. 2019).  The alleged deceit must have been directed at the court, or occurred during a pending judicial proceeding, and caused actual damages to the claimant.  *Morelli & Gold, LLP v. Altman*, 24 Misc. 3d 1221(A), 13 (Sup. Ct. 2009).

**A.  *Res Judicata* Bars This Action**

Defendants correctly assert that the complaint should be dismissed because the claims are barred by *res judicata*.  Doc. 15, 10.  The doctrine of *res judicata* broadly encompasses the notion that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]"  *Mitchell v. Nat'l Broad. Co.,* 553 F.2d 265, 268 (2d Cir. 1977) (quoting *S. Pac. R. Co. v. United States,* 168 U.S. 1, 48 (1897)).  *Res judicata* increases judicial efficiency by reducing the number of inconsistent rulings and promoting the finality of judgments.  *Schwartz v. Pub. Adm'r of Bronx Cty.*, 24 N.Y.2d 65, 74 (1969).

The term "*res judicata*" is often used more narrowly in reference to the sub-doctrine of claim preclusion—the concept that "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same ... [claim or] cause of action."  *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530,

535 (5th Cir. 1978)) (internal quotation marks omitted). To assert an affirmative defense of claim preclusion, a party must show that an earlier decision was: (1) a final judgment on the merits, (2) made by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221 (2d Cir. 2012).

The first two prongs of claim preclusion are easily met here. Pursuant to a stipulation dated August 1, 2014, Martell agreed in a settlement stipulation to withdraw his motion to vacate with prejudice. Doc. 14, Ex. 6. The Court takes judicial notice of the motion to vacate as it is a document Martell relied on in the complaint. Doc. 1, ¶ 107 (referencing the stipulation); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (deeming any written instrument attached as an exhibit to the complaint or referenced in it as part of the complaint). A voluntary dismissal with prejudice in connection with a settlement agreement is an adjudication on the merits under *res judicata*. *See Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986). There is no dispute that the motion to vacate was litigated in a court of competent jurisdiction.

The third prong requires that the same parties or their privies be involved in both actions in order to preclude the later litigation. *See, e.g., Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003). It is well settled that the attorney-client relationship itself establishes privity. *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y. 2014); *see also Pierre v. Lieberman*, No. 16CIV5473GBDHBP, 2017 WL 9565660, at *6 (S.D.N.Y. June 14, 2017), *report and recommendation adopted*, No. 16CIV5473GBDHBP, 2017 WL 3316266 (S.D.N.Y. Aug. 3, 2017) (collecting cases). Martell concedes that an attorney-client relationship existed between Defendants and Mrs. Martell during the Divorce Action. Doc. 1, ¶ 2. Therefore, the Defendants were privies in the Divorce Action.

Lastly, Martell raised the same allegations of attorney misconduct in both the Divorce Action and the instant action. Doc. 1, ¶¶ 101,117. Although, Martell's motion to vacate in the Divorce Action was based entirely upon the legal theory of "fraud upon the court," his § 487 claim is still barred by *res judicata*. Doc. 19, 16. New York's transactional approach to *res judicata* means that once a claim is concluded, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or seeking a different remedy. *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008).

More specifically, when a claim of violation of Judiciary Law § 487 was based on the same transactions contested in an underlying action, it should have been brought in that action. *Robert v. Cooper*, 114 A.D.3d 456, 457 (2014). This District applied that rule in *Heriveaux*, where a plaintiff's § 487 claim was barred by *res judicata* when, in a prior action, he had moved to vacate a judgment based on fraud but did not litigate the § 487 claim. *Heriveaux*, 2018 WL 3364391, at *4. Similarly, Martell did not raise the § 487 claim in the Divorce Action. Doc. 19, 16. He further asserts that he could not have brought the § 487 claim because it would have interfered with Mrs. Martell's right to an attorney of her choice and the court would have denied it on that basis. Doc. 19, 17. This argument is speculative and lacks factual and legal support. Martell's reliance on *360 W. 11th LLC v. ACG Credit Co. II, LLC* is unavailing because there the court did not address § 487 in the context of *res judicata*. 90 A.D.3d 552, 553 (1st Dep't. 2011). When the court denied adding the § 487 claim to the amended complaint, it did so on the ground that doing so would be prejudicial as the attorney would have to be disqualified based on a rule about lawyers not serving as witnesses in their cases. *Id.* Accordingly, the § 487 claim is barred pursuant to claim preclusion.

### B. Section 487 Claim Was Improperly Raised Here

New York common law is clear that § 487 claims cannot be brought in separate, subsequent actions when claimants failed to raise such claims during the pendency of the action in which they arose, absent an exception. *See Seldon v. Bernstein*, 503 F. App'x 32, 32–33 (2d Cir. 2012) (collecting cases). Martell cites *Melcher v. Greenberg Traurig LLP* as a case that held that § 487 can be properly brought in a separate action from the one in which it arose. 135 A.D.3d 547, 551 (N.Y. App. Div. 2016); Doc. 19, 11 n.4. However, the holding in *Melcher* was that the plaintiff was not collaterally estopped from litigating the issue of the alleged deceit in a subsequent action, which was the proximate cause of plaintiff's damages, because it was never fully litigated in the prior action. 135 A.D.3d at 554. The court further distinguished the holding by stating that if the plaintiff had been seeking to collaterally attack a prior adverse judgment or order on the ground that it was procured by fraud, then the appropriate action would have been vacatur in that action and not the second action. *Id.* Accordingly, § 487 claims are precluded if they arise from a claim that has reached its conclusion in a prior action.

Martell concedes that "there are numerous decisions" providing that a claim under § 487 must be raised in the proceeding in which the alleged attorney deception or attempt to deceive occurred. Doc. 19, 11. But he argues that there is an exception to the rule when the alleged deceit was "part of a broader fraudulent scheme." *Id.* (citing *Oorah, Inc. v. Kane Kessler, P.C.*, No. 17 CIV. 7175 (PAE), 2018 WL 3996930, at *4 (S.D.N.Y. Aug. 21, 2018), *vacated in part*, 768 F. App'x 69 (2d Cir. 2019)). The court in *Oorah* held that a § 487 claim must be dismissed under *res judicata* when the alleged misrepresentations did not plausibly allege a broader fraudulent scheme than the scope of the prior litigation. *Oorah*, 2018 WL 3996930, at *4.

Martell alleges that this exception applies here because Defendants engaged in a broader fraudulent scheme to deprive him of funds due to him under the Pre-Nuptial Agreement and to leverage him into accepting an unfavorable settlement. Doc. 19, 2. But these allegations fall squarely within the scope of the issues in the Divorce Action and do not plausibly allege a broader fraudulent scheme. *Oorah*, 2018 WL 3996930, at *4; *see e.g., Newin Corp. v. Hartford Acc. & Indem. Co.*, 37 N.Y.2d 211, 218 (1975) (holding § 487 exception applied where attorney's fraud was extrinsic to the litigation and part of a larger bond fraud scheme beyond the scope of the law suit). Therefore, Martell is barred from bringing a § 487 outside of the Divorce Action.

Given that Martell's § 487 claim is barred by *res judicata* and cannot be brought outside of the underlying Divorce Action, the Court need not address whether the allegations in the complaint were implausible or demonstrably false. Doc. 13, 14.

## IV. Conclusion

For the reasons sets forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 13, and close the case.

It is SO ORDERED.

Dated: September 20, 2019
        New York, New York

                                                      Edgardo Ramos, U.S.D.J.